Benjamin Swaggard, Plaintiff in Error, v. David Hancock, Defendant in Error.

Kansas City Court of Appeals, April 25, 1887.

1. Practice—Motion for Judgment—Bill of Exceptions not Filed—Case Adjudged.—Where a motion was made for judgment, upon answer filed, and no bill of exceptions was filed, the action of the trial court on the motion is not open to review by this court. But this court will review the record proper without a bill of exceptions.

2. Gaming—Action Under Section 5720, Revised Statutes, to Recover Money Lost—Foot Race.—Under section 5720, Revised

Statutes, a horse race is a game, and a foot race is also a game, in the meaning of the said statute. And under the statute, the plaintiff is not limited to his action against the person winning his property, but may recover it from any person taking it with knowledge of the facts.

3. CONTRACT—CONSIDERATION—WHAT IS NOT SUFFICIENT — COMPROMISE.—The payment by one, of a debt clearly due, does not constitute a sufficient consideration to support any kind of a contract or agreement. No one can claim compensation for doing that which he is *bound in law* to do. To make the settlement of assumed rights, a sufficient consideration for a promise, there must be at least an appearance of right, sufficient to raise a possible doubt in favor of the party asserting the claim. *Long v. Towl,* 42 Mo. 549.

4. PRINCIPAL AND AGENT—LIABILITY OF AGENT FOR TORT.—A principal cannot confer upon his agent authority to commit a tort upon the rights or the property of another ; nor to commit offences prohibited by law ; in such cases the agent is liable as a principal.

ERROR to Saline Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action by plaintiff for the recovery of various sums of money, lost by him on a certain foot race, amounting in the aggregate to the sum of nine hundred and fifty dollars. The answer was, first, a general denial, and, next, as follows :

"Defendant, further answering, says, that about the date mentioned in the said petition, to-wit : about June 21, 1883, one Hill placed in the hands of defendant, a large sum of money, and requested defendant to make with it bets, for him, on a foot race, that day to be run by, and between, said Hill and one Baker, which is mentioned in the petition ; that, in pursuance of such request, the defendant, on that day, made a bet with plaintiff, of one hundred and fifty dollars, on said race, defendant betting that Hill would win said race, and plaintiff that Baker would win ; that, at the time said

bet was made, the said Baker was present, and proposed to plaintiff and defendant that said bet should be increased to two hundred dollars a side; that, the said Hill, being also present, desired to increase said bets, and, by agreement of said Hill and Baker and plaintiff and defendant, said bet was increased to two hundred dollars, the said Baker furnishing fifty dollars, and plaintiff one hundred and fifty dollars, upon the one side, and the said Hill furnishing fifty dollars and the defendant one hundred and fifty dollars, said money furnished by defendant being part of the money given him, as aforesaid, by said Hill; that all the said money was then placed in the hands of one James Randolph, as stake-holder, with instructions, that, if Baker should win the said foot race, the whole of said money should be paid to plaintiff, but, if Hill should win said race, said money should be given to defendant; that, afterwards, on the same day, plaintiff and defendant made another bet, of two hundred dollars each, on the same foot race, and placed the money in the hands of one John R. Cason, with the same instructions as were given to Randolph, as aforesaid; that, on the same day, defendant made another bet of one hundred dollars, with one John R. Cason, on said foot race, and placed the money in the hands of one Robert J. McMahan, as stake-holder, with instructions to pay all of said money to Cason, if Baker won said race, and to defendant, if Baker lost said race; that, afterwards, defendant was informed, and now believes, that said Cason made said bet for the plaintiff, and with the plaintiff's money; that, on the same day, the defendant made a bet, of a pair of horses, with plaintiff, against a pair of horses of plaintiff's, on the result of said foot race, and said horses were all placed in the hands of John R. Cason, as stake-holder, with the same instructions to him, in regard to said horses, as had been given said Randolph in regard to the money placed in his hands; that all said bets were made by the defendant, for said Hill, with

the money of said Hill; that, in the bet of the pair of horses, as aforesaid, defendant put up his own horses, bet for Hill, Hill placing in the hands of defendant the value of said horses in money, to be retained by defendant in the event said horses should be lost; that, before said foot race was run, the plaintiff was fully informed, and well knew, that all the bets made by defendant, with him, either directly or indirectly, were made, by the defendant, for said Hill, and that Cason was also informed, at the time of making the bet with him, as aforesaid, that the money, bet by defendant as aforesaid, was the money of said Hill, and that said bet was made, by defendant, for said Hill.

"And defendant says that plaintiff was informed, and well knew, that defendant would not bet any money or property, for himself, on said foot race; that said foot race was won by said Hill, and that said bets were lost by plaintiff, and that, afterwards, the plaintiff ordered the money and horses bet by plaintiff and defendant, as aforesaid, to be delivered to defendant, by said stake-holder, and said money and said horses were delivered to defendant, and that, directly afterwards, defendant delivered to said Hill, all money which had been placed in his hands by said Hill, including the money placed in his hands by said Hill, to secure him, or pay him, in case the said horses were lost. And also delivered to said Hill, one-half of all money won by him on bets made for him by defendant, including the money won on the bets aforesaid, and that the defendant retained the other half of said money, by agreement with said Hill, and that defendant purchased from said Hill, his one-half interest in the horses won as aforesaid, from plaintiff, the defendant being entitled to the other half interest in said horses, under an agreement with said Hill.

"And the defendant further states that he made no bets with plaintiff on the result of said foot race, other than stated above; that, afterwards, on the same day

as aforesaid, the plaintiff requested the defendant to return to him the said horses so won from plaintiff as aforesaid, and proposed to defendant that if he would return him said horses, the plaintiff would make no claim upon defendant for any money won from plaintiff on said foot race; but that, if the defendant would not return him said horses, then the plaintiff would immediately institute suit against defendant for said horses and said money; that the defendant, in good faith, believing himself fully and legally entitled to retain said horses and said money, so kept by him, and that he was not liable to plaintiff for any money lost by plaintiff on said foot race, and believing the plaintiff had no legal claim to any such money or property, denied plaintiff's right to demand the same, and refused to deliver plaintiff said horses; that the plaintiff thereupon proposed that the matter of difference between himself and defendant, in reference to said horses and said money, should be submitted to disinterested parties for adjustment, and the defendant, in order to avoid litigation, accepted said proposition, and that, after an ineffectual attempt to settle said matters of difference in that way, the plaintiff and defendant both fully understanding all of the facts, in order to prevent litigation about said matters, and for the purpose of forever settling all matters of difference between them, concerning or growing out of bets made upon said foot race, honestly and fairly agreed with each other that the defendant should deliver to the plaintiff the said horses, without suit, and that plaintiff should pay defendant the sum of one hundred dollars, and release defendant from all claims which plaintiff might have against him on account of any money lost by plaintiff on said foot race; that, in pursuance of said agreement, the defendant did deliver to plaintiff the said horses, which were of the value of about four hundred and fifty or five hundred dollars, and the plaintiff did pay to defendant said sum of one hundred dollars, and released defendant from all claims which plaintiff might

have against him on account of any money lost by plaintiff on said foot race; and the defendant, having fully answered, asks to be discharged, with his costs."

The plaintiff filed a motion for judgment, notwithstanding the answer.

The court overruled the motion, and, the plaintiff refusing to plead further, rendered the following judgment:

"And now, at this day, came the parties to this suit, by their attorneys, and the motion heretofore filed by plaintiff, for judgment, is taken up and by the court, overruled, and, the plaintiff refusing to plead further, the court doth adjudge the answer of defendant as true, and a sufficient answer and defence to the several demands of plaintiff's petition. It is, therefore, considered, ordered and adjudged by the court, that the plaintiff take nothing by this writ; that defendant go hence, without day, and recover of plaintiff the costs and charges in this behalf expended, and that execution issue therefor."

No bill of exceptions was filed. The plaintiff has brought the case here on a writ of error.

C. B. BUCKNER and SAMUEL DAVIS, for plaintiff in error.

I. Plaintiff's *motion* ought to have been sustained, because the defendant's answer admits that defendant has received six hundred dollars of the plaintiff's money which defendant now holds, to plaintiff's use, and because said answer does not show any reason why plaintiff should not recover the same.

II. It is the settled law that there can be no *compromise* of a gaming or gambling transaction. *Cato v. Hutson*, 7 Mo. 146 ; Rev. Stat. Mo., 1834–5, pp. 71, 290 ; *Hayden v. Little*, 35 Mo. 442. There is no consideration to uphold the contract of compromise. *Mullanphy v. Riley*, 10 Mo. 493; *Riley v. Kershaw*, 65 Mo. 224; *Burgs v. Koop*, 48 N. Y. 225; *Bliss v. Swartz*, 65 N. Y. 444; 1 Parsons on Contracts [6 Ed.] p. 439, *et seq.*

III.   There can be no *agency* to make wagering contracts or to carry on gambling transactions.   *Williams v. Wall,* 60 Mo. 319 ; *Humphrey v. McGee,* 13 Mo. 436 ; *Cato v. Hutson, supra ; Hayden v. Litlle, supra ; Willis v. Gammill,* 67 Mo. 731.

IV.   Plaintiff is entitled in this action to recover all sums won from him by defendant, under one general count for money had and received.   *Williams v. Wall, supra ; Humphrey v. McGee, supra ; Mason v. Waite,* 17 Mass. 560.

BOYD & SEBREE, for defendant in error.

I.   There was no *exception* saved to the action of the trial court in overruling the motion for judgment, nor bill of exceptions filed making such action of the court a *part of the record.*   The motion is, therefore, improperly in the record, and, as the action of the court thereon was not made a part of the record, it is *not subject to review* in this court.   *United States v. Gamble,* 10 Mo. 457 ; *Christy's Adm'r v. Meyers,* 21 Mo. 112.

II.   The judgment was for *the right party.*   The petition does not state facts sufficient to constitute a cause of action.   The suit is to recover money lost on a foot race, and founded upon section 5720, of the Revised Statutes, which is as follows:   "Any person who shall lose any money or property, at any game or gambling device, may recover the same by civil action."   A foot race is not a "game or gambling device," within the meaning of this section.   Sections 1548 and 5720, of the Revised Statutes, are, in substance, found in the statutes of 1825.   The former is to punish the gambler for his wrong-doing ; the latter to prevent his retaining the spoils of his vocation.   The latter section was enacted in aid of the former.   *Williams v. Wall,* 60 Mo. 318. They go hand in hand, and ought to be construed alike. The former section is construed not to include betting on a horse race ; why should the latter be construed differently ?   *State v. Lemon,* 46 Mo. 375 ; *State v. Hayden,* 31 Mo. 35.

III. The *facts stated in the answer must be taken as true*, and the question, therefore, is upon their *sufficiency*. After the stakeholders had, upon the order of plaintiff, delivered the property to defendant, the plaintiff demanded the horses of defendant and threatened a suit for the horses and money unless defendant delivered him the horses at once. "The defendant, in good faith, believing himself fully and legally entitled to retain said horses and said money, so kept by him, and that he was not liable to plaintiff for any money lost by plaintiff on said foot race, and believing the plaintiff had no legal claim to any such money or property, denied plaintiff's right to demand the same, and refused to deliver plaintiff said horses." * * * "The plaintiff and defendant * * * *in order to prevent litigation* about said matters, and for the purpose of settling forever all matters of difference between them concerning or growing out of bets made upon said foot race, *honestly and fairly agreed* with each other that the defendant should deliver to the plaintiff the said horses without suit, and that plaintiff should pay the defendant the sum of one hundred dollars and release defendant from all claims which plaintiff might have against him on account of any money lost by plaintiff on said foot race." In pursuance of this agreement the horses, worth four hundred or five hundred dollars, were delivered to plaintiff and the one hundred dollars paid to defendant. Thus all matters of dispute between plaintiff and defendant were compromised and settled; and such compromise was valid and will be sustained. *Kercheval v. Doty*, 31 Wis. 476; *Valle v. Picton*, 16 Mo. App. 178.

IV. The situation of the parties and their respective right to the property was one of *doubt*, and, therefore, subject to *compromise*. The proposition, stated to a lawyer, causes him to doubt the result of his reflection; whatever may be his final decision, when presented to the trial judge, a man of learning and ability, he was of opinion that so much room for doubt surrounded the

parties concerning their respective rights that their difference was a proper subject for compromise. *How much more, then,* might both of the parties, *unlearned in the law,* have had doubts as to their respective rights. *Livingston v. Dugan,* 20 Mo. 102 ; *Knovenberger v. Beinz,* 56 Mo. 121. Hancock, after the property had been delivered to him, had an interest in it. It belonged to him, subject only to the statutory right of recovery by the plaintiff, by an action to be commenced within three months (if such action could be maintained at all). The matter was the subject of a suit at law, and, as such, was a subject for compromise. *Draper v. Owsley,* 56 Am. Dec. 218 ; *Ball v. Parker,* 28 Am. Dec. 55.

I.

HALL, J.—No bill of exceptions was filed in this case, and the point is raised by the defendant's counsel that, therefore, the action of the circuit court on the plaintiff's motion for judgment is not open to review by us. This is true. *United States v. Gamble,* 10 Mo. 457 ; *Christy's Adm'r v. Meyers,* 21 Mo. 112. But the petition, answer, and judgment of the circuit court are parts of the record without a bill of exceptions. *State v. White,* 61 Mo. 441. The judgment was, that the answer was a sufficient answer and defence to several demands of the petition, and that, plaintiff refusing to plead further, he "take nothing by this writ ; that defendant go hence without day," etc. This action of the court appears on the face of the record, and needs no motion to disclose it (*Bagley v. Emerson,* 79 Mo. 140) ; and is open to review by this court, without the aid of a bill of exceptions. "If error is committed, apparent on the face of the record, no bill of exceptions is needed." *State to use v. White,* 61 Mo. 442. The question, therefore, for us, is, not whether the court erred in overruling the plaintiff's motion for judgment, but whether the court erred in rendering the judgment entered in the case.

## II.

This action is based on our statute in relation to gaming, the first section of which (Rev. Stat., sect. 5720) provides: "Any person, who shall lose any money or property at any game or gambling device, may recover the same by civil action."

It was early held that, under. that statute, a horse race was a game. *Shropshire v. Glasscock*, 4 Mo. 536; *Boynton v. Curle*, 4 Mo. 600. And the consistency between that holding and the subsequent holding that a horse race was not a gambling device within the meaning of our criminal code (*State v. Hayden* 31 Mo. 35), was explained in *Hayden v. Little* (35 Mo. 420). Ever since the last named case, decided in 1865, the statute under consideration has continued unamended, and we must hold it to be the settled law of this state that a horse race is a game under that statute. And we think that it necessarily and logically follows that, if a horse race is a game under that statute, a foot race is also a game in the meaning of said statute. We so hold.

## III.

The plaintiff's horses, then, which the defendant returned to him under the terms of the so-called compromise, had been lost by plaintiff at a game.

It matters not who won the horses, the defendant, or Hill, the plaintiff had the right to demand their return by the defendant in whose possession they were, and, upon the defendant's refusal to make such return, to recover them by the appropriate "civil action." By the statute the plaintiff was not limited to his action against the person winning the horses. *Williams v. Wall*, 60 Mo. 320. The plaintiff, plainly, could have recovered the horses from any one who had taken them with knowledge of the facts (*Williams v. Wall,*

*supra*) ; and, especially, from the defendant who actually did the gaming, whether he did it for himself or another. *Cato v. Hutson*, 7 Mo. 146.

## IV.

Clearly, under the well settled law of this state at the time of the so-called compromise, the plaintiff was entitled to the possession of the horses, and could have enforced his right to such possession by civil action. Was the return of the horses by the defendant, under such circumstances, a sufficient consideration to support the agreement of compromise? There is no misunderstanding or doubt as to the general rule concerning the sufficiency of the consideration of a contract. Our supreme court has approved the following statement by Mr. Parsons as to the consideration of a note : the consideration "may be either a gain or a benefit of any kind to him who makes the promise, or a loss or injury of any kind suffered by him to whom it is made." *Hudson et al. v. Busby*, 48 Mo. 36. But payment of a part of what one is bound in law to pay forms no consideration for postponing the payment of the residue. *Price v. Cannon*, 3 Mo. 453. And the promise by the maker of a note to pay the same rate of interest as that drawn by the note is not a sufficient consideration to support an agreement for an extension of time of the payment of the note, for the reason that the promise by the maker of the note is "merely a promise to do what he is already bound to do." *Moore v. Bank*, 22 Mo. App. 695. And the payment of the principal of a note constitutes no consideration for a promise to discharge the maker of the note from the payment of interest. *Willis v. Gammill*, 67 Mo. 730. We think that it may be stated as an undoubted proposition of law, that the payment by one of a debt clearly due does not constitute a sufficient consideration to support any kind of a contract or agreement. No one can claim compensation

for doing that which he is plainly and clearly bound in law to do.

And so in the case at bar. The plaintiff was clearly entitled to the possession of the horses; plainly, by civil action, he could have recovered possession of them. In other words, in law, the defendant was clearly and plainly bound to give possession of the horses to the plaintiff. For doing this the defendant can claim no compensation. The delivery of the horses by the defendant to the plaintiff cannot form a consideration sufficient to support the agreement of compromise. The fact that the defendant might have forced the plaintiff to a civil action to recover the possession of the horses, and that the delivery of the horses to plaintiff saved him that trouble and expense, does not change the case. "To make the settlement of assumed rights a sufficient consideration for a promise, there must be, at least an appearance of right sufficient to raise a possible doubt, in favor of the party asserting the claim." *Long et al. v. Towl*, 42 Mo. 549. This was said in relation to the dismissal of certain suits. The court added : "The plaintiffs, having clearly no just claim against the defendant, had no right to sue him, and can derive no advantage from having done so. The dismissal of suits so palpably unjust forms no adequate consideration for a promise." And we say that the surrender of the horses by the defendant to the plaintiff, which surrender the defendant was plainly in law bound to make, forms no consideration for the agreement of compromise. As the dismissal of a suit, palpably unjust, is no adequate consideration for a contract, so the surrender of property to one, plainly its owner and entitled to its possession, without suit, is no adequate consideration for a contract. The agreement of compromise pleaded in the answer was without consideration, and, therefore, of no effect, null and void.

## V.

The statute under discussion is a penal statute, and the acts of gaming included within its terms must be regarded as prohibited thereby. As a principal cannot confer upon his agent an authority to commit a tort upon the rights or the property of another (Story on Agency, sect. 311), so a principal cannot confer upon his agent authority to commit an act prohibited by law. An agent who commits an act prohibited by law is liable as a principal. The defendant, in this case, was liable under the statute as if he had acted for himself. *Cato v. Hutson*, 7 Mo. 148. By gaming, the defendant committed a wrong against the public, and he must suffer the penalty imposed by the statute therefor. The defendant must return to the plaintiff the money lost by him on the bets made by the defendant. The answer alleges that Hill furnished in person fifty dollars on the first bet of two hundred dollars. Whatever doubt there might have been as to the liability of the defendant for the fifty dollars, lost by the plaintiff, and bet against the fifty dollars thus furnished by Hill, is removed by the further allegations of the answer of an agreement between Hill and defendant to divide between them in equal parts the entire sum won on the bets made. By this agreement the defendant and Hill became jointly liable to the plaintiff for the entire sum lost by him on said bets. *Laytham v. Agnew*, 70 Mo. 49. These are also additional reasons for holding that the plaintiff was clearly entitled to recover his horses from the defendant.

As to the fifty dollars furnished by Baker the plaintiff had no right of recovery. That money was furnished by Baker with the knowledge of all parties, including the defendant. Baker and not plaintiff could have recovered it. In *Cato v. Hutson* (7 Mo. 146), and *Humphrey v. McGee* (13 Mo. 436), the interest of the

others than the plaintiff in the bets was unknown. Those cases turned upon the fact that such interest was unknown. The money bet by Cason was the plaintiff's money and was bet for plaintiff. The plaintiff was entitled to recover it.

For these reasons, we think, that the court erred in holding that the answer stated a complete defence to the petition. On the pleadings the plaintiff was entitled to a judgment for a certain sum. We have concluded, neither to render that judgment here, nor to direct the circuit court to render it, but, inasmuch as we do not hold wholly in favor of the position taken by either side, and as, therefore, one party or both may desire to plead further, to reverse the judgment and remand the cause for further proceedings in accordance with this opinion. It is so ordered. All concur.