## ANNIE M. POPE-TURNBO, Appellant, v. MAGGIE BEDFORD, Respondent.

**St. Louis Court of Appeals, April 5, 1910.**

1. **MONOPOLIES: Contracts: Valid and Invalid Provisions: Divisibility.** A contract, by which one party agreed to teach another a method for treating the hair, the latter agreeing to use the former's remedies exclusively, and further agreeing not to mention having learned said method except in connection with the use of said remedies nor to teach said method without having exacted a similar contract from the pupil, consists of seperable stipulations, some of which go too far toward restraining trade and favoring monopoly to be enforced, while others are not subject to this objection.

2. ————: ————: **Stipulations Held to be in Restraint of Trade.** The agreement not to use any remedies but those belonging to said party while treating patients by a common method to which said party had no exclusive right was in restraint of trade and fostered monopoly, was unreasonable at common law and in contravention of section 8966, Revised Statutes 1899, there being no limitation in respect of territory or time.

3. **GOOD WILL: Is Species of Property.** The good will of preparations used in treating the hair and system of treatment is a species of property.

4. **CONTRACTS: Negative Covenant: Action Will Lie to Restrain Breach: Equity.** An action in equity will lie to restrain the breach of a negative stipulation in a contract, which is supported by a consideration, if it is not oppressive, opposed to the policy of the law, nor for personal services.

5. ————: ————: ————: ————: **No Irreparable Injury.** There is authority for saying the violation of a negative covenant will be restrained, even though it does not appear irreparable damage will flow from a violation of it, and that an injunction will be granted almost as a matter of course to prevent the breach of such covenants.

6. ————: ————: **Stipulations Held Valid: Breach of Negative Covenants.** Plaintiff agreed to teach defendant a method for treating the hair, the latter agreeing to use the former's remedies exclusively and further agreeing not to mention having learned said method except in connection with the use of said remedies. In an action to restrain the breach of said contract, *held*, the stipulation that defendant should not mention

having learned plaintiff's method of treatment except in connection with the use of her preparations was enforceable, and that plaintiff could enjoin defendant from advertising herself as plaintiff's pupil after she had ceased to use plaintiff's remedies in treating the hair, under the rule authorizing injunctions to restrain the breach of a negative covenant in a contract.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

REVERSED AND REMANDED (*with directions*).

*Hugh K. Wagner* and *M. Hartmann* for appellant.

*Howard Sidener* and *Rozier Meigs* for respondent.

GOODE, J.—These parties entered into a contract which we transcribe:

"This contract made and entered into this 29th day of August, 1907, by and between Annie M. Pope of the city of St. Louis, State of Missouri, party of the first part, and Mrs. Maggie Bedford, of 3964A Finney avenue, party of the second part, Witnesseth, that:

"Whereas, said Annie M. Pope has knowledge of a certain system or method of treating the scalp and hair, having for its object the production or increase of a growth of hair, which system of treatment said party of the first part has practiced on large numbers of persons for years, and for use in which said party of the first part has adopted certain preparations known as 'Poro' Temple Grower, 'Pope' Hair Grower, 'Poro' Pressing Oil, etc., which said preparations the party of the first part has found by experience to be especially suitable for and adapted to her aforesaid system or method of treatment of the scalp and hair;

"Now, therefore, in consideration of the said party of the first part instructing said party of the second part in said system or method of treatment of the scalp and hair and in the use and application of said 'Poro' remedies and hair applications, said party of the second part hereby agrees as follows:

"1.   That the party of the second part will pay to the party of the first part the sum of twenty-five dollars ($25).

"2.   That the party of the second part will not use in the practice of said system or method of scalp or hair treatment so taught the party of the second part by the party of the first part as aforesaid any temple grower, hair grower, pressing oil, or other application or preparation except the above mentioned 'Poro' preparations of the party of the first part, and said party of the second part agrees not to mention having learned the system or method of treatment of the scalp and hair of the party of the first part except in connection with the use by the party of the second part of said 'Poro' preparations of the party of the first part and not in connection with the use of any other hair or scalp applications or treatments; and said party of the second part furthermore agrees that if the party of the second part teaches said system or method of hair and scalp treatment of the party of the first part to any one else, it shall be only after having first obligated any such pupil by a contract similar to the one contained in this paragraph not to practice or mention said treatment of the party of the first part without using said 'Poro' preparations of the party of the first part.

"In testimony Whereof the parties hereto have hereunto affixed their signatures and seals at St. Louis, Missouri, the day and year first aforesaid.

                    "MRS. MAGGIE BEDFORD  (Seal).
                    "ANNIE M. POPE          (Seal).
"Witnesses:  Lena Love, Mrs. Octavia A. Rainey."

Plaintiff's name was affixed to the contract as Annie M. Pope, but she testified that since the date of the instrument she had been divorced and resumed, in connection with her name by marriage, her maiden name, Turnbo, and now calls herself Annie M. Pope-Turnbo. Plaintiff taught her system of hair and scalp treatment

to defendant, the tuition extending through about two weeks and defendant paid a fee of twenty-five dollars. The process of treatment was thus described by plaintiff:

"In the beginning you take the hair down and brush it, then we dry clean it; this process means to take the dandruff off the scalp with a brush, then apply soap, massage the hair, then wash the soap out and dry the hair and after that apply Poro Pressing Oil, then when we finish the treatment, we apply Poro Hair Grower to the entire scalp with the use of Poro Temple Grower."

Defendant described plaintiff's process about as the latter did, saying it consisted of nothing but taking a comb, scraping the dandruff off the scalp, washing the hair and pressing it, a process defendant said she had been using four or five years previous to the date of the contract; that if a customer came to her for treatment she scraped the dandruff out, working with a comb, washed the hair and scalp in a tub of water, pressed the hair out and put a little oil on it. Defendant testified she applied to plaintiff to be taught the latter's method, paid twenty-five dollars, and afterwards the contract was presented to her and she signed it without reading, but would not have signed it she had known it bound her to use Poro preparations forever. After receiving a diploma from plaintiff, defendant began to practice at her own home No. 3964A Finney avenue, St. Louis, plaintiff's place of business being No. 2223 Market street. Defendant must have commenced to practice in September, 1907 and she testified she used plaintiff's Poro decoctions until March, 1908, then ceased to use them and instead used her own preparation known as Bedford's Wonderful Hair Grower. On March 21, 1907, defendant inserted this advertisement in a newspaper published in St. Louis and admitted to have a wide circulation:

"Mrs. Bedford, 3964A Finney avenue, is now in business for herself. She was formerly a pupil of Mrs. A. M. Pope, nee Turnbo, and thoroughly understands her business and guarantees all work. She would be pleased to have you give her a call. Telephone, Lindell 2646."

Plaintiff testified her process of treatment of the hair and scalp was a secret one for which she had built up a reputation and it was becoming famous; that plaintiff was known in St. Louis and over the country to cause hair to grow rapidly on people's heads; that the secret of the treatment consisted in the application of the Poro remedies to the hair and scalp. She said these remedies produced a growth of hair as had been proved in many instances; that when defendant applied for instruction, defendant said she was using a treatment different from plaintiff's but wanted to learn the latter's so defendant could "establish herself in business on the same basis." There was testimony to prove the treatment administered by defendant, in the course of which her remedies were used on patients instead of plaintiff's, did not yield a good result. One patient treated by defendant testified the latter said she was doing the same work plaintiff was, and only "used a different soap;" that in connection with the treatment defendant applied to the hair and scalp two remedies called Temple Grower and Bedford's Wonderful Hair Grower. Another witness testified she had taken plaintiff's treatment for three years and had been benefited; that she was nearly bald when she commenced the course and it had improved the growth of her hair.

I. The petition in this case might be considered either a bill in equity to restrain defendant from advertising or saying she had been a pupil of plaintiff and had learned plaintiff's system and method of treatment, unless defendant practiced the same method and treatment, and also to enjoin her from practicing the system with-

out using plaintiff's remedies; or it might be consider-
ed as uniting a case at law for damages for breach of
the contract with a suit in equity for an injunction.
[Paddock v. Somes, 102 Mo. 226, 14 S. W. 746.] The
cause was tried without a jury and no declarations of
law were asked. The parties appear to treat the case as
one in equity for an injunction, and we will dispose of
the appeal on the theory that it is. Counsel for plain-
tiff have discussed in several phases the question of
whether the contract is void because in restraint of
trade. We think it consists of separable stipulations,
some of which go too far toward restraining trade and
favoring monopoly, to be enforced, whereas others are
not subject to this objection, and it not infrequently
happens that contracts are thus divisible. [Oregon Nav.
Co. v. Winsor, 87 U. S. 64.] Except the use of the Poro
remedies, it is not insisted for plaintiff there was a se-
cret method of peculiar efficacy in her process of treating
the hair. Hence defendant in cleansing the scalp of
dandruff and washing and oiling the hair, was not mak-
ing use, contrary to the terms of the contract, of a
trade or professional secret belonging to plaintiff. De-
fendant breached the contract in treating patients, only
by using her own remedies instead of plaintiff's as she
had agreed to do. But the agreement not to use any
remedies but plaintiff's while treating patients by a
common method to which plaintiff had no exclusive
right, was in restraint of trade and fostered monopoly.
It was intended and adapted to prevent the use of any
remedy on the hair except plaintiff's, was unlimited in
respect of territory or time, was unreasonable at com-
mon law, we think, and certainly was in contravention
of a statute of this State. [Mallinckrodt Chem. Co. v.
Nemnich, 83 Mo. App. 6; Long v. Towl, 42 Mo. 545.]
The statute besides other provisions, declares all agree-
ments between persons which tend to lessen full and
free competition in the manufacture and sale of any arti-
cle, product or commodity, and all agreements under

the terms of which it is stipulated, agreed and understood persons doing business in this State shall sell or offer for sale any particular article or commodity and shall not sell or offer for sale any competing commodity, to be against public policy and void. [R.. S. 1899, sec. 8966; State ex rel. v. Standard Oil Co., 194 Mo. 124, 91 S. W. 1062.]

II.    There is another phase to the case: The petition accuses defendant of telling her patients she had learned her system of treatment from plaintiff, and of advertising herself as plaintiff's pupil after she had ceased to apply the latter's remedies and was applying her own. It is alleged the reputation of plaintiff's business, her method of treating the hair and her preparations were being greatly damaged by said conduct, which constituted a breach of the agreement and worked detriment to plaintiff's business and the reputation she had established for her system, by "imposing responsibility for the harmful, deleterious and inadequate results of the use of said 'Bedford's Wonderful Hair Grower.'" The testimony for plaintiff conduced to prove she had established a good will for her remedies and system of treatment and was enjoying an increasing business. This testimony is uncontradicted and must be accepted as true. The good will of her preparations and system of treatment is a species of property. [14 Ency. Law (2 Ed.), 1086; Beebe v. Hatfield, 67 Mo. App. 609; Met. Nat'l Bank v. Dispatch Co., 36 Fed. 722.] It was of value to plaintiff and she had the right to protect it from unfair competition by inserting a restrictive stipulation in contracts made with pupils to prevent them from leading the public to believe they applied plaintiff's remedies when, in fact, they applied others less efficacious. [Goodyear, etc., Co. v. Rubber Co., 128 U. S. 598; Lawrence Mfg. Co. v. Tenn. Mfg. Co., 138 U. S. 537; Hopkins on Unfair Trade, section 12 and notes.] Probably she would have the same right in the absence

of such a stipulation, but as to that we need not inquire. In view of the restriction it was unfair for defendant to advertise herself, either verbally or in the press, as having been a pupil of plaintiff, thereby giving the impression she administered plaintiff's system of treatment after she had ceased to do this. In this respect the case strikes us as simply one to restrain the breach of a negative stipulation in a contract; a relief readily granted in equity if the stipulation is supported by a consideration, and is not oppressive, opposed to the policy of the law nor for personal services. Those conditions of relief exist in the present case, and this further one, too, if it is essential: The damages plaintiff would suffer from breaches of the stipulation are not recoverable in a legal action because they cannot be measured. [Beekman v. Marsters, 11 L. R. A. (n. s.) 201.] There is authority for saying the violation of a negative covenant inserted in a contract to protect property will be restrained even though it does not appear irreparable damage will flow from a violation of it. [Schlitz Brew. Ass'n v. Neilsen, 8 L. R. A. (n. s.) 494.; Dickerson v. Canal Co., 15 Beav. 260; Huline v. Shreve, 4 N. J. Eq. 116.] Commentators say injunctions are granted almost as a matter of course to prevent the breach of such covenants. [3 Pomeroy, Eq. Jur., section 1342; see, too, 2 High. Injunctions, section 1142.] Those writers refer to the restraint of breaches of negative covenants in leases, but we do not see any reason why the principle does not apply to the stipulation in question. Plaintiff considered it would be detrimental to the good will of her method of treatment and remedies to have persons who had studied under her as pupils advertise that fact after they had commenced to practice, unless they used plaintiff's remedies; and this opinion stood on solid ground, if, as she testified, the beneficial part of her system consisted in applying the Poro remedies to the scalp. The use of remedies which lacked their virtue, would impair their reputation and diminish the value

of plaintiff's good will. We have no doubt the contract ought to be enforced to this extent and find abundant authority for our conclusion in the text of sections 1342 to 1344 inclusive, of 3 Pomeroy, Eq. Jur., and cases cited in the notes. See, too, Hall v. Wester, 7 Mo. App. 56; St. Louis Safe Dep. & Sav. Bank v. Kennett, 101 Mo. App. 370, 389, 74 S. W. 474; Manhattan Mfg. Co. v. Stock Yards, 23 N. J. Eq. 161.

The judgment entered below dismissing plaintiff's bill and denying any relief by injunction will be reversed and the cause will be remanded with directions to enter judgment that defendant be enjoined from mentioning to patients she had learned from plaintiff the latter's method of treatment of the scalp and hair, and from advertising herself as the former's pupil unless she uses plaintiff's Poro preparations instead of her own in treating patients; and that the costs of this action be taxed against the defendant. All concur.